**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

CHAD LOCHRIDGE, HEATHER LOCHRIDGE,
EVERETTE LOCHRIDGE, TWYLA
LOCHRIDGE, KEVIN KORNEGAY, LINDA
DANFORTH, PATRICIA LEACH, DEBRA
McKEE, BRIAN McKEE, PATSY PICKEL,
STEVEN PICKEL, CARLIS SMITH, LYDIA
SMITH, REBECCA SMITH, JUDY KATHRYN
HALE, SHERRY JENKINS, PEARSON
JENKINS, and RYAN AGEE, Each individually
and on behalf of all persons similarly situated                PLAINTIFFS

V.
                                       Case No. 12-cv-05047

LINDSEY MANAGEMENT CO., INC. and                        DEFENDANTS
JAMES E. LINDSEY

<u>**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DECERTIFY**</u>
<u>**THE CLASS OF HOURLY EMPLOYEES**</u>

Eva C. Madison (98183)
Kim Flanery Coats (96267)
LITTLER MENDELSON, P.C.
217 E. Dickson St., Suite 204
Fayetteville, Arkansas 72701
Telephone:  479.582.6100
Facsimile:  479.582.6111

Kimberly Rives Miers (Texas Bar No. 24041482)
Jeremy W. Hawpe (Texas Bar No. 24046041)
LITTLER MENDELSON, P.C.
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, Texas 75201.2931
Telephone:  214.880.8100
Facsimile:  214.880.0181

**ATTORNEYS FOR DEFENDANTS**

**TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ................................................................................. 1

II.   LEGAL STANDARD .......................................................................... 4

III.  FACTUAL BACKGROUND ............................................................... 7

    A.    Overview of Lindsey Management's Operations ............................... 7

    B.    The Putative Nonexempt Class Consists of Resident Managers and
    Assistant Managers Who Are Compensated for All Hours Worked ............. 8

        1.   Resident Managers ................................................................. 8

        2.   Assistant Managers ............................................................... 8

    C.    Defendants Maintain and Follow Proper Time Keeping and
    Reporting Policies and Practices ....................................................... 9

    D.    Plaintiffs' Own Timekeeping and Payroll Records Contradict Their
    Allegations ...................................................................................... 11

IV.   THE CONDITIONALLY CERTIFIED CLASS OF HOURLY
    EMPLOYEES SHOULD BE DECERTIFIED ......................................... 12

    A.    The Factual and Employment Settings Surrounding Plaintiffs' Off-
    The-Clock Claims are Disparate ...................................................... 13

        1.   Plaintiffs Cannot Establish a Single Plan, Policy, or Decision
        that Violates the FLSA ......................................................... 13

            a.   There are Irreconcilable Conflicts Within the Class
            Regarding Overtime Policy .................................... 14

            b.   Plaintiffs' Own Testimony Refutes the Allegedly
            "Uniform Policy or Practice" ................................. 18

            c.   Common Policy and Practice is to Comply With the
            FLSA .................................................................... 22

        2.   No Similar Employment Setting Unites All Plaintiffs ......................... 26

    B.    Defenses Asserted in this Matter Require Individualized Analysis ............. 28

    C.    Plaintiffs' Damages Claims Will also Require Individualized Analysis ....... 29

        **D.**     **Fairness and Procedural Considerations Dictate that this Case Not Proceed as a FLSA Collective Action** ............................................................. 31

**V.**    **CONCLUSION** ............................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Barron v. Henry County School Sys.*,
   242 F.Supp.2d 1096 (M.D. Ala. 2003) ...................................................................14

*Basco v. Wal-Mart Stores, Inc.*,
   No. 00-3184, 2004 U.S. Dist. LEXIS 12441 (E.D. La. July 2, 2004) ..................21, 24, 26, 29

*Blaney v. Charlotte-Mecklenburg Hosp. Auth.*,
   No. 3:10-CV-592-FDW-DSC, 2011 U.S. Dist. LEXIS 105302 (W.D.N.C. Sept. 16,
   2011) .........................................................................................................14

*England v. New Century Fin. Corp.*,
   370 F. Supp. 2d 504 (M.D. La. 2005) ...................................................................21

*Frye v. Baptist Mem. Hosp., Inc.*,
   No. 07-2708, 2010 U.S. Dist. LEXIS 101996 (W.D. Tenn. Sept. 27, 2010)...................24, 28

*Gallender v. Empire Fire & Marine Ins. Co.*,
   2007 U.S. Dist. LEXIS 7127 (S.D. Miss. Jan. 31, 2007) ........................................13

*Gatewood v. Koch Foods of Miss., LLC*,
   No. 07-82, 2009 U.S. Dist. LEXIS 113896 (S.D. Miss. Oct. 20, 2009)........................ passim

*Johnson v. TGF Precision Haircutters, Inc.*,
   2005 U.S. Dist. LEXIS 44259 (S.D. Tex. Aug. 17, 2005)...................................21, 24

*Lugo v. Farmer's Pride Inc.*,
   737 F. Supp. 2d 291 (E.D. Pa. 2010) ................................................................21, 24, 27

*MacGregor v. Farmers Ins. Exch.*,
   No. 2:10-CV-03088, 2011 U.S. Dist. LEXIS 80361 (D.S.C. July 22, 2011) ...................25, 28

*Pacheco v. Boar's Head Provisions Co.*,
   671 F. Supp. 2d 957 (W.D. Mich. 2009) .............................................................23

*Pfohl v. Farmers Ins. Group*,
   2004 U.S. Dist. LEXIS 6447 (C.D. Cal. Mar. 1, 2004).........................................13

*Plewinski v. Luby's, Inc.*,
   2010 U.S. Dist. LEXIS 39179 (S.D. Tex. Apr. 21, 2010) .....................................14

*Reyes v. Tex. EZPawn, LP*,
   No. V-03-128, 2007 U.S. Dist. LEXIS 1461 (S.D. Tex. Jan. 8, 2007)..........................26, 31

*Ruiz v. Serco, Inc.*,
    No. 10-cv-394-bbc, 2011 U.S. Dist. LEXIS 91215 (W.D. Wis. Aug. 5, 2011) ...............14, 25

*Seward v. IBM*,
    08 Civ. 3976, at 48 (Slip Op. S.D.N.Y. Jan. 20, 2012) (Attached hereto as Exhibit A)..........28

*Smith v. T-Mobile USA, Inc.*,
    2007 U.S. Dist. LEXIS 60729 (C.D. Cal. Aug. 15, 2007), *appeal dismissed*, 570 F.3d
    1119 (9th Cir. 2009)..................................................................................................32

*Thiessen v. GE Capital Corp.*,
    267 F.3d 1095 (10th Cir. 2001) ...........................................................................13, 31

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. ____, 131 S. Ct. 2541 (2011).............................................................14, 25, 33

*Zivali v. AT&T Mobility*,
    No. 08 Civ 10310 (JTR), 2011 U.S. Dist. LEXIS 50707 ....................................................23

## STATUTES

29 U.S.C. 216(b) ......................................................................................................13

29 U.S.C. § 207..........................................................................................................23

FLSA...............................................................................................................28, 31, 33

## OTHER AUTHORITIES

Rule 23 .................................................................................................................25

Rule 23(b)(2)........................................................................................................25

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**CHAD LOCHRIDGE, HEATHER**
**LOCHRIDGE, EVERETTE LOCHRIDGE,**
**TWYLA LOCHRIDGE, KEVIN KORNEGAY,**
**LINDA DANFORTH, PATRICIA LEACH,**
**DEBRA McKEE, BRIAN McKEE, PATSY**
**PICKEL, STEVEN PICKEL, CARLIS SMITH,**
**LYDIA SMITH, REBECCA SMITH, JUDY**
**KATHRYN HALE, SHERRY JENKINS,**
**PEARSON JENKINS, and RYAN AGEE, Each**
**individually and on behalf of all persons**
**similarly situated**                                                              **PLAINTIFFS**

**V.**                                              **Case No. 12-cv-05047**

**LINDSEY MANAGEMENT CO., INC. and**                       **DEFENDANTS**
**JAMES E. LINDSEY**

<u>**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DECERTIFY**</u>
<u>**THE CLASS OF HOURLY EMPLOYEES**</u>

**I.      INTRODUCTION**

      This case should not proceed as a collective action because Plaintiffs cannot prove that all

of the members of the group of Plaintiffs are "similarly situated" with respect to their hourly

employee work.  Following the exchange of thousands of documents, with each new offer of

proof, and with each successive deposition taken in this matter, Plaintiffs demonstrate further

that their claims of unpaid overtime are unique, individualistic claims – and not based on any

uniform process applied to them all.  The record shows the myriad of irreconcilable differences

in Plaintiffs' overtime experiences:

        • As Community Directors, Plaintiffs Rebecca Smith, Chad Lochridge, and Heather
          Lochridge testified that they never instructed subordinate Assistant Managers or
          Resident Managers to work unpaid overtime,[1] and Plaintiff Twyla Lochridge

---

[1] Def. App. 60-61 [E. Lochridge Dep. 194:22-195:2] ("Q. Did you ever tell any of the assistant managers that work
there on the property with you that they should not record all the hours that they worked?  A. No.  Q. Never told

testified that hourly Assistant Managers are "paid for every hour that they work" including overtime.[2]   Plaintiff Kathryn Hale also testified that as an hourly employee she was never asked to revise her time sheet to conceal overtime, and was paid for all the hours she reported.[3]

- On the other hand, at one time Plaintiff Chad Lochridge testified that as an Assistant Manager, he believed he was required to do *unpaid* overtime work,[4] and Plaintiff Pearson Jenkins testified he did not receive all the overtime pay he reported.[5]

- In contrast, Plaintiff Patsy Pickel testified that as an Assistant Manager, she received overtime pay – even for hours *she did not work*.[6]

- Although he allegedly did work overtime as an Assistant Manager, Chad Lochridge testified that when he supervised Assistant Managers, he elected to do after-work tasks so that his subordinates did not work overtime and he could stay within his budget.[7]   Patsy Pickel, on the other hand, testified that she regularly exceeded her allotted hours budget because of all the overtime her subordinates worked.[8]

- Twyla Lochridge testified that her Assistant Managers were *not allowed to work overtime*,[9] but Plaintiff Rebecca Smith testified that when she tried to discipline an employee for working overtime, she herself was disciplined by Lindsey Management's Human Resources office.[10]

- Everett Lochridge testified that as an Assistant Manager, he worked 40 hours per week – no overtime.[11]   Heather Lochridge testified that, if at all, she worked two

---

them that?  A. No."); Def. App. 55 [C. Lochridge Dep. 177:8-12] ("Did you ever tell [the Assistant Managers] not to record all the time that they worked?  A.  No.  Q.  You never did?  A. No."); Def. App.  69-70 [H. Lochridge Dep. 298:5-299:12] (Plaintiff enforced Lindsey Management's rules regarding off-the-clock work by hourly employees and had the authority to discipline employees and correct timesheets if any hours worked were not reported); Def. App. 109 [R. Smith Dep. 265:5-16] ("Q. You certainly never instructed them to work off the clock, right?  A. No, ma'am.  Q. That would be illegal, right?  A. I believe so, yes, ma'am. Q. You're not aware of any of your employees working off the clock, right? [. . .] A. Not that I know of.  Q. Because you would have had a duty to report that, right?  A. Yes, ma'am.").

[2] Def. App. 74 [T. Lochridge Dep. 99:11-18] ("Q. All the hourly employees are?  A. Yeah.  They're paid for every hour that they work.  Q.  And they're paid overtime if those hours are over 40?  Yes, they are.").

[3] Def. App. 21-22 [K. Hale Dep. 66:15-23; 127:17-19].

[4] Docket Entry 49-3 [Declaration of Chad Lochridge ("Lochridge Decl.") ¶ 15].

[5] Def. App. 31 [P. Jenkins Dep. 52:3-5].

[6] Def. App. 90 [P. Pickel Dep. 169:18-25] (Even when Pickel did not work an entire 15 hours of scheduled overtime each week, she was paid that amount so long as she worked at least eight hours overtime).

[7] Def. App. 51 [C. Lochridge Dep. 143:15-18].

[8] Def. App. 95 [Pickel Dep. 201:21-202:2].

[9] Def. App. 75 [T. Lochridge Dep. 225:4-11; 227:3-8] ("Q. So that's your testimony, under oath, that Lindsey did not allow overtime.  Do you want to keep your testimony that way?  A. Yes, I do.  Q. Okay.  A. Exactly.").

[10] Def. App. 108 [R. Smith Dep. 52:6-12].

[11] Def. App. 59 [E. Lochridge Dep. 53:15-25].

hours of overtime in a week,[12] whereas Patsy Pickel testified that as an Assistant Manager she was regularly scheduled to work 15 hours of overtime hours each week.[13]  Pickel testified that her husband, on the other hand, was regularly scheduled for only two overtime hours.[14]

- Twyla Lochridge testified that the Assistant Managers she supervised were only permitted to work overtime in July and August.[15]  On the other hand, Plaintiff Pearson Jenkins testified that as an hourly employee, he worked fewer hours in the summer months.[16]

- Linda Danforth testified that she chose not to report some overtime work,[17] while other Plaintiffs testified that they understood this was against Lindsey Management's overtime policy.[18]

These Plaintiffs cannot represent one another.  A collective action under the Fair Labor Standards Act (FLSA) must be based on "representative" proof – what some plaintiffs show will be applied to the others to determine both liability and damages.  This model works where class members are materially the same – they need not be identical, but close enough that a conclusion that applies to one can be applied to all.

This is not that kind of case.  Here, the named Plaintiffs cannot show that they are similarly situated to one another, much less to the unnamed, opt-in Plaintiffs they seek to represent.  Plaintiffs cannot prove that all of the members of the conditionally certified class of hourly employees were subject to the same policy or practice that deprived them of overtime pay to which they were entitled.  Instead, each Plaintiff had a unique experience as an hourly employee – they are entitled to an individualized inquiry on merits and damages, as Defendants are entitled to present defenses unique to each Plaintiff.  Proceeding in a collective fashion in this matter would violate Defendants' due process rights and the Rules Enabling Act.

---

[12] Def. App. 67 [H. Lochridge Dep. 126:1-2].
[13] Def. App. 84 [P. Pickel Dep. 60:17-23].
[14] *Id.* 60:24-65:3.
[15] Def. App. 76 [T. Lochridge Dep. at 227:14-17].
[16] Def. App. 34 [P. Jenkins Dep. 177:18-24].
[17] Def. App. 12 [L. Danforth Dep. 146:18-24].
[18] *See, e.g.*, Def. App. 69 [H. Lochridge Dep. 298:5-299:12]; Def. App. 109 [R. Smith Dep. 265:5-16].

Because each putative class member must be considered on an individualized basis and many of those individuals will require a similar week-by-week analysis due to variances in overtime allegations, timekeeping practices and hours worked, this case cannot efficiently proceed in a collective fashion.  The inability to offer common proof on the contested issues means that the successful adjudication of Plaintiffs' claims cannot establish a right to recovery for other putative class members across the country that have vastly different factual settings with a variety of individualized defenses available to Defendants.  The daily experience of hourly employees varied widely and requires an individualized analysis in order to determine whether each employee worked unpaid overtime.

## II.    LEGAL STANDARD

Plaintiffs bear the burden of demonstrating that they are similarly situated to the putative class members they seek to represent by a preponderance of the evidence.  *Freeman v. Wal-Mart Stores, Inc*., 256 F. Supp. 2d 941 (W.D. Ark. 2003); *West v. Border Foods, Inc*., No. 05-2525 , 2006 U.S. Dist. LEXIS 96963, at *24 (D. Minn. June 12, 2006); *Zavala v. Wal Mart Stores Inc*., 691 F.3d 527, 537 (3d Cir. 2012); *Anderson v. Cagle's, Inc*., 488 F.3d 945, 952-53 (11th Cir. 2007).  Although the burden for conditional certification is extremely lenient, Plaintiffs' burden at the decertification stage is much higher.  *Douglas et al. v. First Student, Inc.* 888 F. Supp. 2d 929, 933 (E.D. Ark. 2012) (citing *Thiessen v. Gen. Elec. Capital Corp*., 267 F.3d 1095, 1103 (10th Cir. 2001), cert. denied, 536 U.S. 934 (2002).  "To avoid decertification, the named plaintiffs must introduce 'substantial evidence' that the Opt-In plaintiffs are similarly situated." *White v. Baptist Mem'l Health Care Corp et al.*, No. 08-2478, 2011 U.S. Dist. LEXIS 52928, at *11 (W.D. Tenn. May 17, 2011).

Courts in the Eighth Circuit and elsewhere have identified several factors that should be considered at this stage, including "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant that appear to be individual to each plaintiff, and (3) fairness and procedural considerations." *Id.; Cruz v. Lawson Software, Inc.*, 764 F. Supp. 2d 1050, 1056 (D. Minn. 2011); *see also Anderson v. Cagle's, Inc.*, 488 F.3d 945, 53 (11th Cir. 2007) (quoting with approval *Thiessen*, 267 F.3d at 1103). The Court should also consider whether Defendants had a common policy or plan in violation of the FLSA that negatively impacted the Plaintiffs *and* opt-in Plaintiffs. *Lawson Software, Inc.*, 764 F. Supp. 2d at 1057 (citing *Burch v. Qwest Commc'ns Int'l, Inc.*, 677 F. Supp. 2d 1101, 1114 (D. Minn. 2009)).

The similarities "'must extend beyond the mere facts of job duties and pay provisions' and encompass the defenses to some extent." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1262 (11th Cir. 2008) (quoting *Anderson*, 488 F.3d at 953). The district court "must consider whether the defenses that apply to the opt-in plaintiffs are similar to one another or whether they vary significantly." *Morgan*, 551 F.3d at 1262. The availability of defenses to some but not all opt-in plaintiffs "poses significant case management concerns" that may justify decertification of the collective action. *See Anderson*, 488 F.3d at 594 n.8 (quoting *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1011 (3d Cir. 1986)).

In general, at the decertification stage, the court should focus on whether the claims are manageable at a class trial. *See Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302 (11th Cir. 2008) (holding collective action neither manageable nor appropriate given evidence of inconsistencies and differences among proposed class members); *Hundt v. DirectSat USA, LLC et al.*, No. 08 C 7238, 2013 U.S. Dist. LEXIS 92458, at *21-22 (E.D. Ill. Jul 1, 2013) (decertifying class because

5

the "desire to litigate collectively for economic reasons . . . does not override the negative effects that certification is very likely to have on the fairness and manageability of the proceedings.") (quoting *Camilotes v. Resurrection Health Car Corp.*, 286 F.R.D. 339, 353 (N.D. Ill. 2012)); *Martin v. Citizens Fin. Group, Inc.*, No. 10-260, 2013 U.S. Dist. LEXIS 43084, at *10-11 (E.D. Pa. Mar. 27, 2013) (holding the "court must determine whether it can 'coherently manage the class in a manner that will not prejudice any party.'") (quoting *Andrako v. United States Steel Corp.*, 788 F. Supp. 2d 372, 384 (W.D. Pa. 2011)); *White v. Baptist Mem'l Health Care Corp et al.*, No. 08-2478, 2011 U.S. Dist. LEXIS 52928, at *11 (W.D. Tenn. May 17, 2011) (decertifying FLSA class because there was "no representative testimony before the Court that would resolve the fairness and manageability issues inherent in proceeding collectively").

At this stage, the court "reconsiders the class certification question after conducting a fact-specific review of each class member who has opted-in, taking into account factors such as employment setting, termination procedures, defenses asserted against various plaintiffs, and other procedural issues." *Prise et al. v. Alderwoods Group, Inc.*, 817 F. Supp. 2d 651, 671 (W.D. Pa. 2011). Whether the claims require individualized determinations is an important factor in the analysis. *See, e.g.*, *Alderwoods Group, Inc.*, 817 F. Supp. 2d at 681 (decertifying five classes because the plaintiffs failed to establish a single decision, policy or plan implemented on a corporate-wide basis that similarly affected plaintiffs); *Zivali v. AT&T Mobility, LLC, et al.*, 784 F. Supp. 2d 456 (S.D.N.Y. 2011) (same and noting a lack of common issues of fact). When performing this analysis, the dispositive question for the Court to resolve is always the same: Is it possible to "generalize across" all of the plaintiffs who have opted in to the action, such that a fair trial "could be achieved on the basis of representative evidence?" *Zivali*, 784 F. Supp. 2d, at

459.  If the answer to that question is "no," the Court must decertify the action.  *Id*. at 460.

Here, the answer is unequivocally "no" and, therefore, the Court must decertify this case.

## III.    FACTUAL BACKGROUND

### A.    Overview of Lindsey Management's Operations

Lindsey Management Co., Inc. ("Lindsey Management" or "the Company"), based in

Fayetteville, Arkansas, began its operations in 1985.[19]  The Company presently manages over

150 multi-million dollar apartment communities ranging from as few as 64 units to as many as

672 units.[20]  The communities, owned by a number of independent legal entities and individuals

are located in eight states across the country.[21]   Amenities vary by community.[22]   Some

communities feature clubhouses, fitness centers, pools, tennis courts, and lakes.[23]   Other

communities also feature business centers, game rooms, tanning beds, whirlpools, saunas, and

resort-style pools.[24]   In addition, there are currently 42 communities with Pro Shops and golf

courses in the eight-state area, and the golf courses range from 9-hole par 3s to 27-hole

championship courses.[25]

Communities with more than 300 apartment units are generally, ***but not always***, managed

by a two-person Community Director team.[26]   Each community with less than 300 apartment

units is managed by an individual Community Director or Resident Manager, or a two-person

management team.[27]   Communities may also be staffed with up to two "Assistant Managers,"

---

[19] Def. App. 111 [Declaration of Job Branch ("J. Branch Decl."), ¶ 3;  *Our Company*, Lindsey Management Co., Inc., available at http://www.lindseymanagement.com/cgi-bin/index.cgi?page=pub_company (last visited Nov. 29, 2012)].
[20] Def. App. 111 [J. Branch Decl. ¶ 4]. Def. App. 8 [Deposition of Job Branch (J. Branch Dep.), p. 16:5-9]
[21] Def. App. 111 [J. Branch Decl. ¶ 4].
[22] Def. App. 111-112 [ J. Branch Decl.  ¶ 5]; Def. App.219 [Declaration of Eddie Smith (E. Smith Decl., ¶ 4)].
[23] Def. App. 111-112  [J. Branch Decl. ¶ 5].
[24] *Id*.
[25] *Id*.
[26] Def. App. 135-136 [Declaration of Betsy Fox ("B. Fox Decl.") ¶12]; Def. App. 66 [H. Lochridge Dep.  p. 117:17-21].
[27] *Id*.

7

and other non-exempt, hourly employees such as a "Senior Leasing Consultant," "Leasing Consultant," "Senior Maintenance Technician," "Maintenance Technician," "Clubhouse Attendant," and/or "Groundskeeper."[28]   Resident Managers and Assistant Managers are classified as non-exempt, and are paid on an hourly basis for all hours worked.[29]   Resident Managers and Assistant Managers are paid overtime at the rate of one and one half times their regular rate for all hours worked over forty in a week.[30]

### B.   The Putative Nonexempt Class Consists of Resident Managers and Assistant Managers Who Are Compensated for All Hours Worked

#### 1.   *Resident Managers*

Resident Managers oversee the operations of smaller communities.[31]   They are compensated on an hourly basis and are eligible for overtime pay whenever they work more than 40 hours in a workweek.[32] The hours worked, job duties, and responsibilities of each Resident Manager differ from that of Community Directors and Assistant Managers, but also differ from that of other employees within the same Resident Manager position.[33]   The amount and frequency of overtime worked by each Resident Manager also varies, with some Resident Managers typically working about five to ten hours of overtime per week, while others typically work ten to fifteen hours of overtime each week.[34]   Some Resident Managers attest to never performing work when they are not clocked in or without adjusting their time records, while others answer brief calls after work and elect not to report that time.[35]

#### 2.   *Assistant Managers*

---

[28] Def. App. 112 [J. Branch Decl. ¶ 8].

[29] Def. App. 214 [Declaration of La'Karen Porter ("L. Porter Decl."), ¶ 4; Def. App. 242 [Declaration of Cynthia Tucker ("C. Tucker Decl.") ¶3]; Def. App. 246 [Declaration of Megan Vanhoy ("M. Vanhoy Decl.") ¶5].

[30] Def. App. 112 [J. Branch Decl. ¶ 11]; Def. App. 135 [B. Fox Decl. ¶ 6].

[31] Def. App. 114 [J. Branch Decl. ¶ 23] Def. App. 242; C. Tucker Decl. ¶ 2].

[32] Def. App. 135 [B. Fox Decl. ¶ 6]; Def. App. 242 [C. Tucker Decl. ¶¶ 3, 6]; Def. App. 117 [Carlat Decl. ¶ 5].

[33] Def. App. 115 [J. Branch Decl. ¶25].

[34] Def. App. 243 [C. Tucker Decl. ¶ 7]; Def. App. 118  [Carlat Decl. ¶ 12].

[35] Def. App. 243 [C. Tucker Decl. ¶ 9-10].

Assistant Managers work under the supervision of Community Directors or Resident Managers.[36]  Some, but not all, Assistant Managers are hourly employees whose schedules vary depending on each community's and their personal needs.[37]  That is so even according to Plaintiffs' own evidence, which acknowledges that Assistant Managers at smaller apartment communities reported "fewer hours," while those in larger apartment communities reported more.[38]

Assistant Managers are eligible for overtime pay whenever they work more than 40 hours in a workweek, but the frequency and amount of overtime that each Assistant Manager works also varies, with some Assistant Managers not working overtime on a regular basis, to others who typically work no more than one to two hours of overtime in a week, and yet others who worked more overtime hours.[39]  While Plaintiff Chad Lochridge states that, as an Assistant Manager he had to perform work whether he was "on-the-clock or not," for which he alleges he was not compensated,[40] other Assistant Managers did not perform work while off-the-clock, and fully reported and were properly compensated for their overtime work.[41]  Some Assistant Managers have performed work after hours and have had their time record adjusted for work performed after working hours, others have not.[42]

## C.   Defendants Maintain and Follow Proper Time Keeping and Reporting Policies and Practices

Lindsey Management maintains a Timekeeping Policy that explicitly requires its employees and the employees of the properties it manages to accurately record time worked, and

---

[36] Def. App. 121 [Declaration of Ashley Crow ("A. Crow Decl.")¶ 2]; Def. App. 117 [Carlat Decl. ¶ 3].
[37] Def. App. 117 [Carlat Decl. ¶ 5].
[38] Docket Entry 49-3 [Declaration of Ray Danforth ("Danforth Decl.") ¶ 11-12].
[39] Def. App. 135 [B. Fox Decl. ¶ 6]; Def. App. 124-125 [Declaration of Kevin Crow ("K. Crow Decl."), ¶ 5-6]; Def. App. 121 [A. Crow Decl. ¶ 6]; Def. App. 118 [Carlat Decl. ¶ 11].
[40] Docket Entry 49-3 [Declaration of Chad Lochridge ("Lochridge Decl."), ¶ 15].
[41] Def. App. 122 [A. Crow Decl. ¶¶ 7-8].
[42] Def. App. 122 [A. Crow Decl. ¶ 9].

defines time worked as including "all time that an employee is physically at work performing tasks for the company."[43]  That policy also makes clear that non-exempt employees are paid one and one-half times their regular hourly rate for all hours worked in excess of 40 hours in a given week.[44]  Consistent with that policy, the Company instructs its employees and the employees of the properties it manages to use the biometric hand scanning system to record all hours worked, to review their payroll records for accuracy, and to report any error to their managers, supervisors, Human Resources, or the Company's Payroll Department for review and correction.[45]  The Company does not set a specific limit of overtime hours that employees may work in a given week, and does not counsel or discipline employees for working above a certain number of overtime hours.[46]  Quite the contrary, they are instructed that if they work in excess of 40 hours in a work week, they must report the additional time worked and they are compensated for the hours.[47]

Various communities apply different practices to ensure the accuracy of time records before payment is issued to employees.[48]  By way of example, at The Greens at Hurricane Creek, Community Directors require Assistant Managers to review the hours reported for each pay period before processing their payments in order to ensure accuracy.[49]  At the Lake Point Apartments, the Resident Manager reviews a report of the hours to be paid each pay period for accuracy before payroll checks are issued, and corrects errors when necessary.[50]  At The Links at

---

[43] Def. App. 134, 140 [B. Fox Decl. ¶ 5 and Ex. 1].
[44] Def. App. 135 [B. Fox Decl. ¶ 6 and Ex. 1].
[45] Def. App. 135 [B. Fox Decl. ¶ 7]; Def. App. 224 [E. Smith Decl. ¶ 26]; Def. App. 121 [A. Crow Decl. ¶ 6]; Def. App. 244 [C. Tucker Decl. ¶ 14-15]; Def. App. 125 [K. Crow Decl. ¶ 10]; Def. App. 119 [Carlat Decl. ¶ 18].
[46] Def. App. 135 [B. Fox Decl. ¶ 9]; Def. App. 121 [A. Crow Decl. ¶ 6]; Def. App. 244 [C. Tucker Decl. ¶ 14]; Def. App. 125 [K. Crow Decl. ¶ 10]; Def. App. 118-119 [Carlat Decl. ¶ 12, 18].
[47] Def. App. 135 [B. Fox Decl. ¶ 6-8; Def. App. 122-123 [A. Crow Decl. ¶ 11]; Def. App. 243-244 [C. Tucker Decl. ¶ 8, 14]; Def. App. 125 [K. Crow Decl. ¶ 7 ].
[48] Def. App. 115 [ J. Branch Decl. ¶32].
[49] Def. App. 121 [A. Crow Decl. ¶ 10].
[50] Def. App. 244 [C. Tucker Decl. ¶ 12].

Springdale, Community Director Kathy Smith requires non-exempt hourly employees to maintain a call log indicating any calls answered after work hours, which she adds to each employee's payroll.[51]

In the past, Plaintiffs' witness, former Regional Manager Ray Danforth, contacted Human Resources disputing the approval of overtime hours worked by his subordinates, but the Company paid the employees for all overtime hours reported despite Danforth's efforts to do otherwise.[52]   For instance, on August 31, 2009, Danforth informed VP/Human Resources Director Betsy Fox that he had not approved 64.5 hours of overtime reported in a biweekly pay period by one of his subordinates.[53]   In response, Fox reminded Danforth that the Company absolutely pays for all overtime hours worked.[54]   Accordingly, to the extent Danforth denied overtime compensation to his subordinates, he did so in direct and blatant disregard of Company policy and Fox's directives.

### D.    Plaintiffs' Own Timekeeping and Payroll Records Contradict Their Allegations

In a futile attempt to create an unlawful common policy or practice that binds all putative class members where there is none, Plaintiffs state that non-exempt, hourly employees were "required to work off the clock" and were "instructed that they were not allowed to clock in or alternatively – even if clocked in – would not be paid for all hours worked."[55,56]   Plaintiffs further claim that Resident Managers were scheduled for fifty-five (55) or sixty (60) hours per week and were not permitted to report more hours than they were scheduled, even if they

---

[51] Def. App. 228, 234-235 [K. Smith Decl. ¶ 2, 29].
[52] Def. App. 135 [B. Fox Decl. ¶ 11].
[53] Def. App. 135, 141-143 [B. Fox Decl. ¶ 11 and Ex. 2].
[54] Def. App. 13 [B. Fox Decl. ¶ 11].
[55] Docket Entry 50, p. 3 [Plaintiffs' Brief]; Docket Entry 49- 4 ¶ 15 [Lochridge Decl.]; Docket Entry 49-3 ¶ 15 [Pickel Decl.].
[56] Docket Entry 49-3 ¶ 13-15, 19-20 [R. Danforth Decl.]

actually worked more hours.[57]  In her sworn declaration testimony, Plaintiff Patsy Pickel further states that she was only paid "minimum wage for forty (40) hours and time and a half for the next fifteen (15) hours per week," and that "even though [she] almost always worked more hours than that," she "was *never* compensated for these hours."[58]  A mere cursory look at a sampling of Pickel's Earnings Statements for the relevant time period, however, makes clear that her sworn declaration statements are false.  Contrary to her claim that she was "never" compensated for more than 15 hours of overtime per week, on several occasions Pickel reported, and was fully paid, for more overtime hours than that.[59]  To be clear, Pickel is not an anomaly.  A sampling of the timecards and payroll records of other named and opt-in Plaintiffs also reveal that, undisputedly, they regularly reported a wide range of regular rate and overtime hours, including hours in excess of 55 or 60 per week, and the Company fully compensated them for those hours.[60]  Indeed, the only fact on the record that can be universally applied to all Plaintiffs is that they were subject to a Company-wide policy that prohibited unpaid overtime.

## IV.   THE CONDITIONALLY CERTIFIED CLASS OF HOURLY EMPLOYEES SHOULD BE DECERTIFIED

The Court should decertify the conditionally certified class defined by the Court as:

> All current and former employees of apartment communities managed by Lindsey Management Co., Inc., who were employed as Community Directors, Resident Managers, or Assistant Managers in Alabama, Arkansas, Kansas, Mississippi, Missouri, Nebraska, Oklahoma or Tennessee at any time during the three (3) years preceding the filing of Plaintiffs' Complaint on March 15, 2012, until the present who were paid on an hourly basis.

(Dkt. 71).

---

[57] Docket Entry 49-3 ¶ 13-15, 19-20 [R. Danforth Decl.].
[58] (emphasis added)  Docket Entry 49-5 ¶ 5 [P. Pickel Decl.].
[59] Compare Docket Entry 49-5 ¶ 5 [P. Pickel Decl.] to Def. App. 147-157 [sampling of Ms. Pickel's Earnings Statement attached as Exhibit 4].
[60] Def. App. 135, 141-143, 148-158 [sampling of timecards and payroll records of other named and opt-in Plaintiffs attached as Exhibit 4 and B. Fox Decl. ¶ 11 and Ex. 2 thereto].

Plaintiffs have not proven that they are similarly situated with respect to their off-the-clock claims.  Section 16(b) permits a collective action by employees, but *only* if all such individuals are "similarly situated."  29 U.S.C. 216(b).  Under this heightened standard, courts focus on the following three factors:

> (1) [the] disparate factual and employment settings of the individual plaintiffs;
>
> (2) the various defenses available to [the] defendant which appear[ed] to be individual to each plaintiff; [and]
>
> (3) fairness and procedural considerations.

*Thiessen,* 267 F.3d at 1103; *Pfohl v. Farmers Ins. Group*, No. CV 03-3080 DT, 2004 U.S. Dist. LEXIS 6447, at *9 (C.D. Cal. Mar. 1, 2004).  Certification under this more demanding standard "is rarely granted."  *Gallender v. Empire Fire & Marine Ins. Co.*, No. 5:05cv220, 2007 U.S. Dist. LEXIS 7127, at *5 (S.D. Miss. Jan. 31, 2007).  Each of these factors for consideration demonstrate that Plaintiffs are not similarly situated in their off-the-clock claims.

## A.   The Factual and Employment Settings Surrounding Plaintiffs' Off-The-Clock Claims are Disparate

Plaintiffs have not demonstrated that the factual and employment settings surrounding their off-the-clock claims are similar.  They must show a "factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]," to advance past this second-stage certification.  *Thiessen*, 267 F.3d at 1103 (internal quotation marks omitted).

## 1.   Plaintiffs Cannot Establish a Single Plan, Policy, or Decision that Violates the FLSA

Plaintiffs cannot show a common unlawful policy or practice that unites their experience as employees of properties managed by Lindsey Management.  They must prove that Lindsey Management had a common policy or plan in violation of the FLSA that negatively impacted the

named Plaintiffs and opt-in Plaintiffs. *Lawson Software, Inc.*, 764 F. Supp. 2d at 1057 (citing *Burch*, 677 F. Supp. 2d at 1114). In meeting their burden to establish a common policy or practice, Plaintiffs must offer more than unsubstantiated allegations, circumstantial evidence, or "outlier instances of rogue behavior by errant supervisors." *Blaney v. Charlotte-Mecklenburg Hosp. Auth.,* No. 3:10-CV-592, 2011 U.S. Dist. LEXIS 105302, at *28-30 (W.D.N.C. Sept. 16, 2011) (internal quotations omitted); *Plewinski v. Luby's, Inc.*, No. H-07-3529, 2010 U.S. Dist. LEXIS 39179, at *4 (S.D. Tex. Apr. 21, 2010) (holding "[t]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences.") (quoting *Barron v. Henry County School Sys*., 242 F.Supp.2d 1096, 1104 (M.D. Ala. 2003)). "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Ruiz v. Serco, Inc.*, No. 10-cv-394-bbc, 2011 U.S. Dist. LEXIS 91215, at *19 (W.D. Wis. Aug. 5, 2011) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ____, 131 S. Ct. 2541, 2551 (2011)) (emphasis in original).

### a.    There are Irreconcilable Conflicts Within the Class Regarding Overtime Policy

Irreconcilable conflicts exist within the group of "representative" Plaintiffs regarding the "policy" that applied to overtime work. Where there are irreconcilable conflicts within an FLSA class, certification is inappropriate. *White v. Osmose, Inc.*, 204. F. Supp. 2d 1309, 1314-15 (M.D. Ala. 2002) (intra-class conflict in a putative class that included both supervisors and the employees whom they supervised); *McClean v. Health Sys., Inc.*, No. 11-03037, 2011 U.S. Dist. LEXIS 142283, at *24-26 (W.D. Mo. Dec. 12, 2011) (discussing that there is an inherent conflict of interest in a proposed FLSA collective action that includes both supervisors who are

responsible for ensuring employees receive their full, uninterrupted meal breaks and the employees whom they supervise).

Here, Plaintiffs claim non-exempt, hourly employees were "required to work off the clock" and were "instructed that they were not allowed to clock in or alternatively – even if clocked in – would not be paid for all hours worked."[61,62]  However, this alleged "off-the-clock policy" is entirely incapable of extrapolation across the putative class.  **Plaintiffs who were promoted to Community Directors but were *paid hourly at one time and fall within the hourly class* staunchly dispute that hourly employees were instructed not to report their overtime.**  Named Plaintiff Everett Lochridge testified[63]:

>  Q. Did you ever tell any of the assistant managers that work there on the property with you that they should not record all the hours that they worked?
>
> A. No.
>
> Q. Never told them that?
>
> A. No.

Named Plaintiff Heather Lochridge testified that as a Community Director she enforced Lindsey Management's rules regarding off-the-clock work by hourly employees and had the authority to discipline employees and correct timesheets if any hours worked were not reported.[64]  Similarly, named Plaintiff Rebecca Smith testified[65]:

> Q. You certainly never instructed them to work off the clock, right?
>
> A. No, ma'am.

---

[61] Docket Entry 50, p. 3 [Plaintiffs' Brief]; Docket Entry 49- 4 ¶ 15 [Lochridge Decl.]; Docket Entry 49-3 ¶ 15 [Pickel Decl.].
[62] Docket Entry 49-3 ¶ 13-15, 19-20 [R. Danforth Decl.]
[63] Def. App. 60-61 [E. Lochridge Dep. 194:22-195:2].
[64] Def. App. 69-70 [H. Lochridge Dep. 298:5-299:12].
[65] Def. App. 109 [R. Smith Dep. 265:5-16].

> Q. That would be illegal, right?
>
> A. I believe so, yes, ma'am.
>
> Q. You're not aware of any of your employees working off the clock, right? [. . .]
>
> A. Not that I know of.
>
> Q. Because you would have had a duty to report that, right?
>
> A. Yes, ma'am.

And named Plaintiff Chad Lochridge testified[66]:

> Q. Did you ever tell [the Assistant Managers] not to record all the time that they worked?
>
> A. No.
>
> Q. You never did?
>
> A. No.

Similarly, hourly Plaintiffs also confirmed that Community Directors had supervisory authority over the hourly employees' reported hours[67]:

> Q. For every single call? It's your testimony that you told them about every single call that you received [after hours]?
>
> A. Yes that's Lindsey policy, you know, assistant managers, whatever goes on the night before, you tell the community directors. [ . . . ]
>
> Q. So is the answer to my question, yes, I told my community directors about every single call that I took after hours?
>
> A. Yes, I followed policy.

---

[66] Def. App. 55 [C. Lochridge Dep. 177:8-12].
[67] Def. App. 33-34 [P. Jenkins Dep. 158:11-15; 158:23-159:3]

In fact, Plaintiff Twyla Lochridge was disciplined as a Community Director for "failing to efficiently manage the leasing office personnel" when one of her subordinate hourly employees improperly reported his work time.[68]

Community Directors were obligated to follow wage and hour laws. And yet, to proceed in this litigation, Plaintiffs who served as Community Directors – and testified they never required unlawful conduct – would be a part of a class that turns on a theory of *supervisor-mandated* off-the-clock work. Not only are these Plaintiffs not similarly situated to those who believe they were required to conceal overtime, proceeding as a collective action would force them to represent the position that – as Community Directors – they violated the law by requiring off-the-clock work. If this action proceeds collectively, hourly employee Plaintiffs will continue to point the finger at Community Directors – also Plaintiffs. Any class member who was promoted to Community Director is inherently conflicted and dissimilar from strictly hourly-employed Plaintiffs. *See Tolentino v. C&J Spec-Rent Svcs., Inc.*, 716 F.Supp.2d 642, 651 (S.D. Tex. 2010) (in finding supervisor not similarly-situated to other plaintiffs, court held: "Due to [Plaintiff's] additional responsibilities [tracking hours of the members of his crew], his status as an 'exempt' employee would likely involve a different analysis than that presented with respect to non-supervisory employees."); *Ellerd v. County of Los Angeles*, No. CV 08-4289 CAS, 2009 U.S. Dist. LEXIS 36865, at *12-14 (C.D. Cal. April 9, 2009) (conditional certification was not appropriate due to conflict between plaintiff social workers and their supervisors).

In *White v. Osmose, Inc.* the court considered whether foremen, who were responsible for tracking and reporting their crew members' payroll information, were "similarly situated" to the crew members themselves. 204 F. Supp. 1309, 1314 (M.D. Ala. 2002). The court found that "since foremen may be held individually responsible for the potential claims of crewmen, there

---

[68] T. Lochridge Dep. 271:9-274:3.

is an inherent conflict of interest between the two groups" and denied certification.  *Id.* at 1314-15.

The same result is required here.  Plaintiffs admit that as Community Directors they enforced overtime rules.[69]  If Plaintiffs' allegation is true – that hourly employees were exposed to a policy imposed by their superiors that required them to conceal overtime – then each Plaintiff who served as a Community Director (supervising and monitoring overtime) is implicated in the allegations.  These employee groups are not "similarly situated" for purposes of the unpaid overtime claims.

> **b.  Plaintiffs' Own Testimony Refutes the Allegedly "Uniform Policy or Practice"**

Plaintiffs' claims regarding off-the-clock work vary dramatically – some testified they worked overtime off-the-clock regularly, others testified they never did.  Some said it was their decision to not to report their time, others testified that their manager instructed them to do so.  Their depositions illustrate these differences:

- Plaintiff Heather Lochridge testified that, as an Assistant Manager, she was paid properly for any overtime work she performed.  She plainly testified that she was not improperly paid as an Assistant Manager[70]:

  Q. Were you paid for all those hours [worked as an Assistant Manager]?
  A. As far as I know, anything we documented.

  Q. And for hours over 40, were you paid time and a half?

  A. I believe so, yes.

  Q. So you're not disputing that you were improperly paid when you were an assistant manager?

  A. An assistant manager, no. . . .

---

[69] *See, e.g.*, Def. App. 69 [H. Lochridge Dep. 298:5-299:12].
[70] Def. App. 67 [H. Lochridge Dep. 26:1-10].

- Linda Danforth also testified that she was paid for all the hours she reported, but said she elected not to report some after-hours work.[71]  Kathryn Hale testified that she, too, did not report all her hours worked – but she did so because she was often asked about her overtime work.[72]  However, like Plaintiffs Lochridge and Danforth, Hale testified she was paid for all the hours she reported.[73]

- Everett Lochridge testified that the hourly employees at his property were aware they had to report their after-hours time; they were told so by the corporate office.[74]  In contrast, Linda Danforth testified that she never knew that she was supposed to, or that she was required to, report all of her time worked regardless of whether it was after-hours.[75]  At the far end of the spectrum, Pearson Jenkins alleges that he was instructed by his supervisors to work off-the-clock.[76]

- Pearson Jenkins and Chad Lochridge were never disciplined for reporting overtime.[77] Rebecca Smith understood the Company wanted to limit the amount of overtime worked, but she was never disciplined for accurate reporting.[78]  In fact, she was disciplined for trying to discipline an hourly employee for working overtime.[79]  Patsy Pickel, on the other hand, testified that she was disciplined for working unapproved overtime.[80]

- Kathryn Hale testified she worked as many as 65 hours each week when she was an hourly employee.[81]  Potential putative plaintiff Ashley Crow submitted a declaration stating that she takes only one day off per week and works nine hours each Saturday, on average.[82]  On the other hand, potential putative plaintiffs Kevin Crow and Mary Carlat each work eight hour days, with only occasional weekend work.  Mr. Crow takes an hour lunch break each day, and Ms. Carlat takes off two days per week.[83]  Plaintiff Chad Lochridge, on the other hand, testified that he *didn't need any time off* as an Assistant Manager.[84]

These reports of hourly work show Plaintiffs are not "similarly situated" – to themselves

or the class they purport to represent.  Federal courts—including many in the Eighth Circuit—

---

[71] Def. App. 12 [L. Danforth Dep. 146:11-24].
[72] Def. App. 21 [K. Hale Dep. 66:4-23].
[73] *Id.*
[74] Def. App. 61 [E. Lochridge Dep. 195:3-25].
[75] Def. App. 13 [L. Danforth Dep. 147:17-21].
[76] Def. App. 32 [P. Jenkins Dep. 152:11-14].
[77] Def. App. 34 [P. Jenkins Dep. 177:3-6]; Def. App. 55 [C. Lochridge Dep. 177:13-15].
[78] Def. App. 109 [R. Smith Dep. 265:17-21].
[79] Def. App. 108 [R. Smith Dep.  52:6-12].
[80] Def. App. 93-94 [P. Pickel Dep. 177:20-178:5].
[81] Def. App. 24 [K. Hale Dep. 129:10-131:4].
[82] Def. App. 121 [A. Crow Decl. ¶ 4].
[83] Def. App. 124 [Decl. of Kevin Crow ¶¶ 2, 4]; Def. App. 118 [Decl. of Mary Carlat ¶ 9].
[84] Def. App. 54 [C. Lochridge Dep. 173:15-20].

have denied collective class certification when, as here, the class allegations are based on unique, anecdotal incidents and "off-the-clock" claims that involve a variety of supervisors and locations as opposed to a uniformly applied policy or practice. *Cruz v. Lawson Software, Inc.*, 764 F. Supp. 2d 1050, 1063 (D. Minn. 2011) (granting defendant's motion for decertification where putative class members' day-to-day work was "not cookie-cutter" and variable); *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (denying conditional certification because "unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden"); *Dado v. Speedway SuperAmerica LLC*, 08-CV-1107 (PJS/RLE), 2009 U.S. Dist. LEXIS 3816, at *10-11 (D. Minn. Jan. 20, 2009) (refusing to grant conditional certification because "plaintiffs have not established a colorable basis for their claim that [Defendant] implemented a corporate decision to ignore its published policies and refuse to compensate assistant managers, shift leaders, and co-managers for answering work-related phone calls at home and for performing gas-price surveys" outside of work hours); *Burch v. Qwest Communs. Int'l, Inc.*, 677 F. Supp. 2d 1101, 1131 (D. Minn. 2009) (requiring plaintiffs to "establish a pattern or practice of employer acquiescence to such work, because only identifying a few instances of off-the-clock work is insufficient to establish that the work was suffered or permitted"); *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W.D. Ark. 2007) (requiring plaintiffs to make a showing that "potential class members were victims of a common decision, policy, or plan of the employer that affected all class members in a similar fashion"); *see also Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280-281 (N.D. Tex. 2008) (decertifying a class of hourly retail employees because "[t]he Plaintiffs' claims vary from store to store and manager to manager").

Indeed, Plaintiffs' own testimony demonstrates that the reporting of Assistant Managers' hours was managed by their supervisors in myriad ways:

- Heather Lochridge personally reviewed and translated time sheets from handwritten records to typed records, and then transmitted the data to the payroll department.[85]

- Everett Lochridge, on the other hand, simply assumed that his subordinate hourly employees were clocked in when they worked, and relied on them to turn in their own time to the corporate office.[86]  He testified he "never" looked at a timecard report.[87]

- When Patsy Pickel was an hourly employee, she recalls that she had to keep daily time records and sign off on each day.  She then sent a copy to each supervisor, and a copy to the corporate office, and scanned the records to store in a "monthly file" kept at the property.[88]

In similar cases, federal courts have concluded that plaintiffs failed to show they were similarly situated.  *Johnson v. TGF Precision Haircutters, Inc.*, 2005 U.S. Dist. LEXIS 44259, at *2 (S.D. Tex. Aug. 17, 2005) (holding "[t]he evidence here is that there was a substantial variance of experiences by different Plaintiffs under different managers and at different shops"); *Basco,* 2004 U.S. Dist. LEXIS 12441, at *19 (refusing to conditionally certify a class because the evidence of off-the-clock work was "extremely anecdotal—one manager requiring it as oppose[d] to all, perhaps once or twice during the course of a plaintiff's work").[89]

Plaintiffs must actually show evidence of a single illicit decision, policy, or plan that unites *all named and opt-in Plaintiffs.  See Lugo v. Farmer's Pride Inc.*, 737 F. Supp. 2d 291,

---

[85] Def. App. 52 [C. Lochridge Dep. 171:17-172:8] (discussing wife Heather's work as Community Director).

[86] Def. App. 61 [E. Lochridge Dep. 195:3-10; 11-17] (noting that subordinates received instructions from the corporate office to turn in timecards, which were submitted by leasing office community director Twyla Lochridge).

[87] *Id.* at 196:12-19.

[88] Def. App. 91-92 [P. Pickel Dep. 173:23-174:11].

[89] *See also England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 506 (M.D. La. 2005) (denying conditional certification because the off-the-clock claims involved a variety of managers and locations); *Gatewood v. Koch Foods of Miss., LLC*, No. 07-82, 2009 U.S. Dist. LEXIS 113896, at *53 (S.D. Miss. Oct. 20, 2009) ("[T]he putative class encompasses employees working in four different physical locations, numerous different departments, during three different shifts, over a period of six years, performing a wide variety of job duties. The maintenance of a collective action is complicated further by the fact that most plaintiffs have worked in multiple positions,

300 (E.D. Pa. 2010) ("Generally, allegations of an overarching policy are insufficient, and plaintiffs are required to produce substantial evidence of a single decision, policy or plan.") (internal quotations omitted).  Here, Plaintiffs alleged that one former regional manager, Ray Danforth, had a practice of challenging overtime pay for hourly employees.  Yet, Plaintiffs do not dispute that – on the one recorded occasion Danforth complained about overtime, Assistant Managers were still paid for their reported hours.  Because Plaintiffs cannot come close to establishing that Danforth's conduct represents a nationwide policy or practice, Plaintiffs' unsubstantiated allegations cannot withstand the fact-intensive inquiry at this stage of certification.

### c.    Common Policy and Practice is to Comply With the FLSA

Plaintiffs' evidence not only fails to establish that there is a common practice of depriving employees overtime, it demonstrates just the opposite.  According to several Plaintiffs' sworn testimony, hourly Assistant Managers did not work unpaid overtime, and Lindsey Management policy prohibited it:

- Plaintiff Heather Lochridge testified that, as an Assistant Manager, she was paid properly for any overtime work she performed.  She testified that she was not improperly paid as an Assistant Manager and that she enforced the Company rules requiring reporting overtime, and prohibiting working off-the-clock.[90]

- Plaintiff Everett Lochridge only worked 40 hours each week as an Assistant Manager.[91]

- Plaintiff Linda Danforth testified she was paid for all hours reported and worked.[92]

- Plaintiff Chad Lochridge testified that he is not "making any allegations in this lawsuit that [he] worked hours that [he was] not paid for" during the time he was an Assistant Manager.[93]

---

departments, and for numerous supervisors who had differing techniques for logging work time.  It is therefore not possible to fairly determine whether . . . they have been allegedly under-compensated on a class wide basis.").
[90] Def. App. 67, 69 [H. Lochridge Dep. 126:1-10; 298:5-299:12].
[91] Def. App. 59 [E. Lochridge Dep. 53:15-25].
[92] Def. App. 12-13 [L. Danforth Dep. 146:25-147:2].

Lindsey Management's policy, both in writing and otherwise, is to comply with the FLSA.  Lindsey Management disseminates the written policy to all employees during new hire training.  Under the policy, non-exempt employees are to be paid overtime rates for all overtime hours worked.[94]   The policy expressly prohibits non-exempt employees from working off-the-clock.[95]  The Company instructs employees of the communities it manages to use the biometric hand scanning system to record all hours worked, to review their payroll records for accuracy, and to report any error.[96]  The Company does not set a specific limit of overtime hours that community employees may work in a given week, and does not counsel or discipline community employees for working above a certain number of overtime hours.[97]  Community employees are instructed to report any and all additional time worked and they are compensated for the hours.[98]  Lindsey Management's policy is undeniably lawful.  *See* 29 U.S.C. § 207 (FLSA requires employers to pay non-exempt employees at least one and a half times their regular rate of pay for hours worked in excess of forty hours per week); *see also Zivali v. AT&T Mobility*, No. 08 Civ. 10310, 2011 U.S. Dist. LEXIS 50707, at *12 (formal policies requiring payment for all overtime hours worked are lawful).  Therefore, this policy cannot support class certification.  *Cf. Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957, 961 (W.D. Mich. 2009) ("[C]ourts have consistently required the plaintiffs to show that the class members were together the victims of 'a single [*unlawful*] decision, policy, or plan' before they will certify a collective action.").

---

[93] Def. App. 49 [C. Lochridge Dep. 45:22-46:1].
[94] Def. App. 135, 141 [B. Fox Decl. ¶ 6 and Ex. 1].
[95] Def. App. 134, 141 [B. Fox Decl. ¶ 5 and Ex. 1].
[96] Def. App. 135 [B. Fox Decl. ¶ 7]; Def. App. 224 [E. Smith Decl. ¶ 26]; Def. App. 121 [A. Crow Decl. ¶ 6]; Def. App. 244 [C. Tucker Decl. ¶ 14-15]; Def. App. 125 [K. Crow Decl. ¶ 10]; Def. App. 119 [Carlat Decl. ¶ 18].
[97] Def. App. 135 [B. Fox Decl. ¶ 9]; Def. App. 121 [A. Crow Decl. ¶ 6]; Def. App. 244 [C. Tucker Decl. ¶ 14]; Def. App. 125 [K. Crow Decl. ¶ 10]; Def. App. 119 [Carlat Decl. ¶ 12, 18].
[98] Def. App. 135 [B. Fox Decl. ¶ 6-8]; Def. App. 122-123 [A. Crow Decl. ¶ 11]; C. Tucker Decl. ¶ 8, 14; Def. App. 125 [K. Crow Decl. ¶ 7 ].

Moreover, Plaintiffs cannot show that Lindsey Management's "common or uniform practice was not to follow its formal, written policy." *Frye v. Baptist Mem. Hosp., Inc.,* No. 07-2708, 2010 U.S. Dist. LEXIS 101996, at *15 (W.D. Tenn. Sept. 27, 2010) (internal citations omitted).  Plaintiffs have no direct evidence that would suggest that Lindsey Management had an unwritten policy or uniform practice to violate the policy.  Plaintiffs cannot show that managers "were trained or instructed not to follow" Lindsey Management's overtime policy. *Lugo*, 737 F. Supp. 2d at 311.

Plaintiffs may claim that they were required to abide by their "payroll budgets" and that this evidences an instruction to conceal overtime.  However, an effort to remain within a payroll budget does not mandate off-the-clock work and is not a company-wide, or even district-wide, instruction to violate the FLSA.  *See Basco,* 2004 U.S. Dist. LEXIS 12441, at *22 (rejecting plaintiffs' unsupported attempt "to make a corporate policy to keep employee wage costs low sufficient proof to justify the creation of a class of all Wal-Mart employees that ha[d] not been properly paid overtime"); *accord TGF Precision Haircutters, Inc.*, 2005 U.S. Dist. LEXIS 44259, at *21 (finding that, although some supervisors attributed their illicit actions to upper level management instruction, there was no evidence of an "overarching policy" because alleged violations were highly variable and depended "upon circumstances and the attitudes and perceptions of individual managers at particular salons").

Plaintiffs cannot show that all managers nationwide – or even at a single community – consistently prohibited or discouraged employees from reporting overtime hours worked.  *See Frye*, 2010 U.S. Dist. LEXIS 101996, at *16.  In fact, the record shows that some Assistant Managers did not perform work while off-the-clock, and fully reported and were properly

compensated for their overtime work.[99]  The record also shows that some Assistant Managers performed work after hours and had their time record adjusted for work performed after working hours, while others have not.[100]  Moreover, some Assistant Managers did not work overtime on a regular basis, while others who typically worked no more than one to two hours of overtime in a week, and others worked more overtime hours.[101]  It is inconceivable that these employees were subject to one, universal policy or practice that denied them overtime wages for hours worked in excess of 40 in a week.  At best, Plaintiffs may be able to show "a company-wide policy giving discretion to local managers or program directors" regarding payroll budgets,[102] but this "is not a 'policy' capable of evaluation on a class-wide basis." *Ruiz*, 2011 U.S. Dist. LEXIS 91215, at *25; *accord Dukes*, 131 S. Ct. at 2554 (holding that a "'policy' of *allowing discretion* by local supervisors over employment matters" is the "opposite of a uniform employment practice that would provide the commonality needed for a class action").[103]  This is a policy that is inherently local in nature and necessarily evaluated on an individualized basis.

Because "[t]he limited allegations in this case do not allow the [C]ourt to reasonably reach the conclusion that [Lindsey Management] had an 'unwritten policy' requiring supervisors to violate the FLSA," collective treatment is inappropriate.  *MacGregor v. Farmers Ins. Exch.*, No. 2:10-CV-03088, 2011 U.S. Dist. LEXIS 80361, at *12 (D.S.C. July 22, 2011).  Unlike *MacGregor*, at this stage the record leads to only one conclusion—there is no such policy.

---

[99] *See, e.g.*, Def. App. 115 [A. Crow Decl. ¶¶ 7-8].

[100] Def. App. 122 [A. Crow Decl. ¶ 9].

[101] Def. App. 135 [B. Fox Decl. ¶ 6]; Def. App. 125 [K. Crow Decl. ¶ 5-6]; Def. App. 121 [A. Crow Decl. ¶ 6]; Def. App. 119 [Carlat Decl. ¶ 11].

[102] Any management discretion would not pertain to off-the-clock work, however, because Lindsey Management's policy prohibits off-the-clock work and treated it as a terminable offense.

[103] That *Dukes* was discussing the Rule 23(b)(2) certification requirements in reaching this conclusion is of little import.  The Fifth Circuit has conceded that "class action terminology from Rule 23 cases" applies to a section 216(b) representative action.  *Mooney*, 54 F.3d at 1212; *cf. MacGregor*, 2011 U.S. Dist. LEXIS 80361, at *14 (implying that the "clearly reasoned" *Dukes* decision regarding plaintiffs' burden to "present even a modest factual showing of a common policy or plan" applies to FLSA claims certified under section 216(b)).

### 2.      No Similar Employment Setting Unites All Plaintiffs

The Court should next consider whether a similar employment setting united all Plaintiffs.  "This first factor assesses the opt-in plaintiffs' job duties, geographic location, supervision, and salary to determine if the Plaintiffs are similarly situated." *Reyes v. Tex. EZPawn, LP*, No. V-03-128, 2007 U.S. Dist. LEXIS 1461, at *8 (S.D. Tex. Jan. 8, 2007).

Here, the non-exempt Plaintiffs' claims arise from dissimilar employment settings. Lindsey Management manages over 150 apartment communities nationwide.  Plaintiffs have testified that the factual and employment settings for non-exempt employees vary widely from property to property because of the wide variety of community amenities, differences in size and capacity of the properties, level of staffing available, age of the community, whether the community was in "lease-up" status, the occupancy rate of the community, the unique preferences of the Regional Supervisors and other factors.  Some Plaintiffs have consistently worked only 40 hours per pay period or less; others have worked 65 hours or more.

Under these facts, the Court has ample authority to decertify the class.  This case involves numerous communities of varying sizes, ages and staffing demands as well as different Regional Supervisors; only *some* of whom allegedly applied pay practices and policies in their own ways, according to Plaintiffs' own sworn admissions.  That Plaintiffs' FLSA claims involve different properties, different amenities, different job duties, different managers, different schedules, and different managerial pay practices readily shows divergent employment settings.  *See Proctor*, 250 F.R.D. at 284 (granting decertification because plaintiffs "worked in settings that var[ied] from store to store, manager to manager, and day to day"); *Gatewood*, 2009 U.S. Dist. LEXIS 113896, at *24 ("It is readily apparent that the named plaintiffs have worked in divergent employment settings and have varying claims as a result of their work in different plants, in different departments, in different jobs, and under different pay practices."); *Basco*, 2004 U.S.

Dist. LEXIS 12441, at *26 (denying certification of proposed class because, *inter alia*, plaintiffs came from different departments, groups, and organizations within the employer, and potential plaintiffs "performed different jobs at different geographic locations and were subject to different managerial requirements which occurred at various times as a result of various decisions by different supervisors made on a decentralized employee-by-employee basis").

Even if the evidence indicates that some Plaintiffs may have alleged legitimate claims, the majority clearly do not. Under those circumstances, decertification is warranted. *Cf. Lugo*, 737 F. Supp. 2d at 303 (concluding plaintiffs were not similarly situated because, *inter alia*, some hourly production workers appeared to have "legitimate claims of undercompensation" while others did not); *Gatewood*, 2009 U.S. Dist. LEXIS 113896, at *54 (finding fact that plaintiffs themselves admitted they were not subject to single pay practice was critical to the decertification decision). That Plaintiffs might share "some general similarities to one another" does not suffice when the evidence shows Plaintiffs work in different positions in different areas of the communities, under different managers on different shifts with different schedules, have different amounts of allegedly uncompensated time and allege different methods for avoiding overtime compensation. *See Lugo*, 737 F. Supp. 2d at 304. Any liability determination necessarily will require the Court, and eventually a jury, to determine whether each individual Plaintiff actually worked off-the-clock, the frequency and duration of such work, whether each Plaintiff's supervisor advised the employee not to report off-the-clock work, whether Defendants were aware of off-the-clock work, whether any off-the-clock work was *de minimus*, whether the employee did in fact report the work and how much of this work was compensated and whether the employee was required to use vacation or sick pay in order to avoid overtime.

27

"The necessity for independent inquiries into each alleged violation makes collective action likely to hinder rather than promote judicial economy."  *MacGregor*, 2011 U.S. Dist. LEXIS 80361, at *16.  Therefore, decertification should be granted.

### B.    Defenses Asserted in this Matter Require Individualized Analysis

Because Defendants' defenses are highly fact specific, do not yield common answers and require individualized analysis, Plaintiffs cannot proceed collectively or as a class on their claims.  When an employer's defenses require individualized analysis, a collective action should be decertified.  *See Zivali*, 2011 U.S. Dist. LEXIS 50707, at *18, *31-32 (refusing to certify an FLSA collective action for several reasons including because defendant's potential defenses were "highly individual to each plaintiff" and the *de minimis* defense "will necessarily vary widely according to the particular situation of each individual plaintiff"); *Seward v. IBM*, 08 Civ. 3976, at 48 (Slip Op. S.D.N.Y. Jan. 20, 2012) (same); *King*, 2006 U.S. Dist. LEXIS 3926, at *46-47 (decertifying collective action in part because defenses, including *de minimis* defense, would be too individualized); *Proctor*, 250 F.R.D. at 282-83 (plaintiffs' claims varied from "manager to manager" and were "factually disparate" and therefore defenses also would be individualized.).  Even if the "likely defenses would not necessarily bar collective treatment," when plaintiffs' factual and employment settings are dissimilar, the second factor tends to weigh in favor of decertification.  *Frye*, 2010 U.S. Dist. LEXIS 101996, at *26.

Here, the complexity, inefficiency, and unfairness of trying this case as a collective action are readily apparent.  As this District Court held in *Proctor,*

> The evidence shows a large factual variety among the individual Plaintiffs' claims and the times they allege they worked off the clock.  These differences in the Plaintiffs' claims mean that the Defendant's defenses would also vary.  Defenses to claims that individuals did not work off the clock but were not paid correctly will be distinct from the Plaintiffs alleging they were asked to work off the clock by management.

250 F.R.D. at 283.

Defenses available to Defendants include, but certainly are not limited to: (1) a Plaintiff did not in fact work in excess of 40 hours in a particular week; (2) a Plaintiff never worked in excess of 40 hours in any week of his or her employment (3) if a Plaintiff did work off-the-clock, Lindsey Management subsequently corrected it; (4) any instructions received to work off-the-clock were outside the scope of authority and contrary to Lindsey Management's policies; (5) even if a Plaintiff did work off-the-clock, the employee unreasonably failed to avail him or herself of curative steps provided by Lindsey Management; (6) even if a Plaintiff did work off-the-clock, the employee affirmatively misrepresented his or her hours worked by acknowledging, in writing, that he or she was paid for all hours of work; (7) a Plaintiff who had an actual and/or constructive knowledge of Lindsey Management's policies regarding off-the-clock work chose to violate that policy; (8) any off-the-clock work falls within the *de minimus* exception to the FLSA; (9) a Plaintiff's claims are barred by statute of limitations or technical defaults; and (10) various supervisors at each community acted in good faith and liquidated damages are not appropriate.  *See Proctor,* 250 F.R.D. at 283; *Basco,* 2004 U.S. Dist. LEXIS 12441, at *25-26. Because Defendants "cannot be expected to come up with 'representative proof' when the [P]laintiffs cannot reasonably be said to be representative of each other," decertification should be granted. *Johnson*, 561 F. Supp. 2d at 587.

### C.    Plaintiffs' Damages Claims Will also Require Individualized Analysis

It is unjust for an employee to recover damages for work he or she did not perform. Here, even under the relaxed FLSA damages standards, Plaintiffs cannot identify their damages to the required degree of specificity, much less one that can be extrapolated across the class:

- Kathryn Hale testified that she "couldn't put a number" on the hours a week she believed she worked.[104]

- Linda Danforth testified that she is owed for 15-20 hours of overtime each week. However, she calculated this amount "in her head" and cannot remember how she arrived at the figure.[105]

- Patsy Pickel claims she is owed overtime pay for 20-25 hours each week, but testified that the overtime she is owed will vary week to week.[106]

- Plaintiff Carlis Smith testified that he worked 30-40 hours of overtime each week, though the number of hours could "possibly" be less. He is unable to identify a method for calculating what is due to him.[107]

- Plaintiff Sherry Jenkins testified that she worked off-the-clock "every week" but also said the amount varied. When asked, she could not estimate the hours she allegedly worked unpaid and could not suggest a method of calculating what she is allegedly owed.[108]

- Pearson Jenkins also testified that the overtime pay he believes he is owed will vary for each day, and each week, and he can't estimate the time.[109]

- Plaintiff Ryan Agee testified that he does not know how many hours he was not compensated for as an Assistant Manager, but he expects that his attorney will "have that number by the time it's required."[110]

Due to the hourly employee Plaintiffs' varying testimony on the amount of work performed and the extent of the alleged damages, this case calls for an individual evaluation of each Plaintiffs' off-the-clock claim to see if there is any basis for entitlement to damages, and the amount of any damages, for each claim. It is unfair to give an average amount of damages to each Plaintiff because the testimony was and will be so wide ranging. A formulaic approach to damages is inappropriate here; Plaintiffs' testimony differs on how long the alleged uncompensated work in any particular day took, whether the work was performed during the

---

[104] Def. App. 23 [K. Hale Dep. 128:4-16].
[105] Def. App. 14, 16 [L. Danforth Dep. 158:25-159:8; 166:2-167:11].
[106] Def. App. 97-99 [P. Pickel 205:25-206:8; 207:9-22].
[107] Def. App. 103-104 [C. Smith Dep. 23:1-17; 22:7-23].
[108] Def. App. 43, 45 [S. Jenkins Dep. 45:14-20, 46:4-7; 212:4-11; 212:17-24].
[109] Def. App. 35, 38-39 [P. Jenkins Dep. 179:24-181:9; 189:20-190:3].
[110] Def. App. 3-4 [R. Agee Dep. 71:25-72:25].

shift, and whether the work was even compensable under the FLSA.  Because damages on the off-the-clock claims, if any, can only be calculated after an individualized analysis of each Plaintiff, this is yet another reason to decertify Plaintiffs' class and collective off-the-clock work claims.

**D.      Fairness and Procedural Considerations Dictate that this Case Not Proceed as a FLSA Collective Action**

The class of hourly employees should be decertified because proceeding in a collective format will rely on improper inferences and produce unfair results.  An FLSA collective action should be decertified where litigating collectively would be unwieldy for the court and/or a jury. *See, e.g., Thiessen*, 267 F.3d at 1105 (court should consider whether collective action would be particularly burdensome); *Reyes*, 2007 U.S. Dist. LEXIS 1461, at *29-30 (holding plaintiffs' claims must be "amendable to generalized evidence" or court cannot "'coherently manage' the class without potentially prejudicing the parties").  The Court must be primarily focused on fairness, and protect the due process principles at issue.  *Big Lots*, 561 F. Supp. 2d 567 at 588 (explaining that it would not be fair to proceed as a collective action where managers were potentially exempt executive employees because "the all or nothing posture of this case makes ruling on the merits fundamentally unfair to both sides"); *Gatewood*, 2009 U.S. Dist. LEXIS 113896, at *70-72.

In *Big Lots*, the district court initially certified a collective action.  However, once the district court began trying the case, it found that "the 'representative' testimony [was] not representative of plaintiffs' experiences."  *Big Lots*, 561 F. Supp. 2d at 579, 583.  The court determined that trying the issues would require "going into the day-to-day job duties of each of the plaintiffs to prove that these [class members] are properly classified as exempt" and that such an "exercise is tantamount to conducting multiple individual trials on the merits and is the

antithesis of a collective action." *Id*. at 586. Based on these findings, the court in *Big Lots* stated that it had "serious concerns about due process" of forcing an employer to rely upon representational proof to defend its position and held that the "facts [did] not justify collective treatment. . . ." *Id*. at 587-88.

These points apply equally to Plaintiffs' off-the-clock claims in the instant case. In order to determine the merits of their claim, the Court would have to examine each Plaintiff on several factors, including*: (1) whether the Plaintiff actually performed the alleged work; (2) whether the Plaintiff performed the work during his shift; (3) how regularly the Plaintiff performed the alleged off-the-clock work; and (4) how long it took for each Plaintiff to perform the various types of work each day. Such an individualized analysis is not consistent with collective action certification. *See, e.g.*, *Diaz*, 2005 U.S. Dist. LEXIS 30382, at *17 (finding that proceeding collectively in off-the-clock case would be too burdensome to manage because claims and defenses would have to be made individually as to each plaintiff); *Smith v. T-Mobile USA, Inc.*, 2007 U.S. Dist. LEXIS 60729, at *24 (C.D. Cal. Aug. 15, 2007), *appeal dismissed*, 570 F.3d 1119 (9th Cir. 2009) (same).

Nothing more graphically illustrates this due process issue than the testimony of Named Plaintiff Heather Lochridge. In her sworn testimony, she admitted that as an hourly employee, she typically worked between 40 and 42 hours per week, and she was compensated at one and a half times her regular rate for any overtime work.[111] Plaintiff Lochridge also testified that she elected not to report some overtime work she performed, even though she knew Lindsey Management policy required her to do so.[112] However, with Plaintiffs' requested representative discovery, she could potentially receive a monetary award for alleged uncompensated overtime

---

[111] Def.  App. 67 [H. Lochridge Dep. 126:1-10].
[112] Def. App. 68 [H. Lochridge Dep.  126:14-127:4].

pay simply because she is a member of the class of hourly employees.  To require Lindsey Management to go forward with this collective action in the absence of a single plan, policy or decision and in the face of highly individualized claims and individualized defenses (including Lindsey Management's defense that some Plaintiffs are not entitled to any recovery at all) would be procedurally unfair and improperly invade Lindsey Management's due process right to defend itself.  Any efficiency gains from trying these claims in a collective action "cannot come at the expense of . . . [Lindsey Management]'s ability to prove a statutory defense without raising serious concerns about due process."  *Johnson*, 561 F. Supp. 2d at 587.  Liability cannot be determined, moreover, on a class-wide basis.  *See Dukes*, 131 S. Ct. at 2560; *Roussell*, 2011 U.S. App. LEXIS 19027, at *7-8.  Therefore, this final factor weighs in favor of decertification. Lindsey Management's motion should be granted.

## V.       CONCLUSION

The conditionally certified class of hourly employees is all over the map – some worked overtime and claim they were not paid, others claim they enforced the timekeeping policies which prohibited unpaid overtime.  This class is not amenable to representative proof.  Because Plaintiffs fail to demonstrate that their off-the-clock claims are similarly situated in fact, the Court should decertify Plaintiffs' FLSA claims.

Respectfully submitted,


/s/ Kimberly Rives Miers
Eva C. Madison (98183)
Kim Flanery Coats (96267)
LITTLER MENDELSON, P.C.
217 E. Dickson St., Suite 204
Fayetteville, Arkansas 72701
Telephone:  479.582.6100
Facsimile:  479.582.6111
emadison@littler.com
kcoats@littler.com

Kimberly Rives Miers (Texas Bar No. 24041482)
Jeremy W. Hawpe (Texas Bar No. 24046041)
LITTLER MENDELSON, P.C.
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, Texas 75201.2931
Telephone:  214.880.8100
Facsimile:  214.880.0181
kmiers@littler.com
jhawpe@littler.com

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2013, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Josh Sanford – josh@sanfordlawfirm.com
Vanessa Kinney – vanessa@sanfordlawfirm.com
Sanford Law Firm, PLLC
One Financial Center
650 S. Shackleford, Suite 400
Little Rock, AR  72211

David Hughes – dhughes@hardinhughes.com
Hughes Hardin, LLP
2121 14th Street
Tuscaloosa, AL  35401

/s/ Kimberly Rives Miers

Firmwide:123552057.2 054984.1002