```
            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
                    FAYETTEVILLE DIVISION
```

CHAD LOCHRIDGE; HEATHER LOCHRIDGE;
EVERETTE LOCHRIDGE; TWYLA LOCHRIDGE;
KEVIN KORNEGAY; LINDA DANFORTH;
RAY DANFORTH; PATRICIA LEACH; DEBRA
McKEE; DEBRA DIANN McKEE AS ADMINISTRATRIX
OF THE ESTATE OF BRIAN McKEE, DECEASED;
PATSY PICKEL; STEVEN PICKEL; CARLIS SMITH;
LYDIA SMITH; REBECCA SMITH; JUDY KATHRYN
HALE; SHERRY JENKINS; PEARSON JENKINS;
and RYAN AGEE, each individually and
on behalf of all persons similarly situated                    PLAINTIFFS

            v.              Civil No. 12-5047

LINDSEY MANAGEMENT CO., INC.; and
JAMES E. LINDSEY                                                DEFENDANTS

## O R D E R

Now on this 10th day of December, 2013, comes on for consideration **Defendants' Motion To Decertify Conditionally Certified Class Of Salaried Employees** (document #268), from said motion, and the response thereto, the Court finds and orders as follows:

1.  In this conditionally certified collective action under the Fair Labor Standards Act ("FLSA"), plaintiffs allege that defendant Lindsey Management Co. ("Lindsey Management") is a property management firm managing apartments in Arkansas, Alabama, Kansas, Mississippi, Missouri, Nebraska, Oklahoma, and Tennessee. They further allege that defendant James E. Lindsey is chairman of Lindsey Management.

Plaintiffs allege that they were employed by defendants and that defendants violated the FLSA during their terms of employment.

2. Two classes of plaintiffs were conditionally certified, as follows:

> All current and former employees of apartment communities managed by Lindsey Management Co., Inc., who were employed as Community Directors, Resident Managers, or Assistant Managers in Alabama, Arkansas, Kansas, Mississippi, Missouri, Nebraska, Oklahoma or Tennessee at any time during the three (3) years preceding the filing of Plaintiffs' Complaint on March 15, 2012, until the present who were paid on a salary basis;

and

> All current and former employees of apartment communities managed by Lindsey Management Co., Inc., who were employed as Community Directors, Resident Managers, or Assistant Managers in Alabama, Arkansas, Kansas, Mississippi, Missouri, Nebraska, Oklahoma or Tennessee at any time during the three (3) years preceding the filing of Plaintiffs' Complaint on March 15, 2012, until the present who were paid on an hourly basis.

These will be referred to as the Salaried Class and the Hourly Class, respectively.

Members of the Salaried Class contend that they were misclassified as exempt employees under the FLSA, because, in fact, they were not exempt. They allege that this misclassification resulted in their not being paid for overtime hours.

3. Defendants now move to decertify the Salaried Class, as part of a two-stage process for collective actions -- conditional certification followed (frequently) by a motion for decertification -- described in **Mooney v. Aramco Service Co.**, **54 F.3d 1207 (5th Cir. 1995), overruled on other grounds**, **Desert Palace, Inc. v. Costa**, **539 U.S. 90 (2003).**

4. Several principles bear on the Court's determination of

this motion:

(a) The FLSA is a remedial statute that should be read broadly in favor of those it was intended to benefit. **Kelley v. Alamo**, **964 F.2d 747, 749 (8th Cir. 1992).**

(b) The Court does not evaluate the substantive merits of plaintiffs' claims at this stage. **Smith v. Heartland Automotive Services, Inc.**, **404 F.Supp.2d 1144, 1148 (D. Minn. 2005).** Rather, it determines whether there is a basis for the claims of class members to go forward on a representational basis.

(c) Plaintiffs bear the burden of proving a basis for collective action. **Rikard v. U.S. Auto Protection, LLC**, **2013 WL 5532688, *2 (E.D. Mo. 2013).**

(d) While the initial certification decision requires only a colorable basis for collective action, a stricter standard applies in analyzing decertification decisions. **Douglas v. First Student, Inc.**, **888 F.Supp.2d 929, 933 (E.D. Ark. 2012).** Like the court in **Zavala v. Wal Mart Stores Inc.**, **691 F.3d 527, 537 (3rd Cir. 2012),** this Court will require plaintiffs to show by a preponderance of the evidence that collective action is appropriate for their claims.

5. Proof that collective action is appropriate depends on showing that employees are similarly situated. They may have been subjected to a unified policy, plan, or scheme of FLSA violations by their employer, or they may have held similar -- although not necessarily identical -- positions. In either case, the "essential question" is whether the differences outweigh the similarities.

**Douglas**, *supra*, 888 F.Supp.2d at 933.

6.  The submissions of the parties lead the Court to conclude that the following information about the policies and practices of Lindsey Management is not disputed:

* The business of Lindsey Management is managing apartment communities.

* All apartment communities managed by Lindsey Management have -- as their highest-level on-site employee -- either a Community Director or a Resident Manager (or a team of such), depending on the size of the property.  Community Directors manage the larger properties, Resident Managers manage the smaller properties.

* Depending on their size, these apartment communities may also have a variety of other employees, including Assistant Managers, Maintenance Managers, and Leasing Consultants.

* With some exceptions, Community Directors are paid a salary and classified by Lindsey Management as exempt under the FLSA, while Resident Managers and Assistant Managers are paid by the hour and classified as nonexempt.

* The job duties of Community Directors and Resident Managers all fall into basically the same categories -- showing and renting apartments; cleaning, painting and repairing them; cleaning and maintaining common areas; managing amenities; collecting rents and deposits, banking the receipts, and keeping the account books; filing reports to their supervisors; troubleshooting tenant problems; and managing staff.

\*   There are differences in the jobs of Community Directors and Resident Managers for several reasons.  Larger properties have larger staffs and require more employee supervision.  Older properties require more maintenance.  Some locations are harder to keep fully occupied due to demographics and require more marketing.  Some properties rent -- in addition to apartments for long-term lease -- furnished executive suites that rent by the day, week, or month and have housekeeping services.  Different properties have different amenities[1], requiring different types of management.  There are differences in management style among the Regional Supervisors to whom the Community Directors and Resident Managers report.

\*   Community Directors are expected to work at least 60 hours a week, and to do "whatever it takes to get the job done."

\*   All employees, regardless of whether they are classified as salaried exempt, or hourly nonexempt, are expected to clock in and out.

\*   Without regard to the number of hours worked, the number of units in the property they managed, or the differing responsibilities that might come with different amenities, salaried Community Directors during the class period received base pay of $910 every two weeks.

7.   Because it is undisputed that members of the Salaried Class worked more than 40 hours per week, the threshold common issue

---

[1] In addition to the one- and two-bedroom apartments common to all the properties, they may have swimming pools, tennis courts, clubhouses, fitness centers, business centers, game rooms, tanning beds, whirlpools, saunas, golf courses, pro shops, grills, and other amenities, in any combination.

they must prove is that they were misclassified as exempt employees. If they were misclassified, and should instead have been treated as nonexempt under the FLSA, then they will be entitled to recover unpaid overtime wages for all hours worked over 40 in any given week. **29 U.S.C. § 207.**

Defendants contend that members of the Salaried Class were properly classified as exempt employees under the executive[2] or the administrative[3] exemptions of the FLSA, or a combination thereof. They contend that the Salaried Class exercised significant discretion to operate vastly different properties, using -- to the extent they found them helpful -- "guidelines and tools" provided by Lindsey Management to help them succeed. They contend that the Salaried Class hired and fired their own staff, and had discretion to handle significant matters.

Members of the Salaried Class contend that -- regardless of the size or composition of the apartment community at which they worked -- their jobs consisted of routine clerical tasks and physical labor

---

[2] To fall within the executive exemption, an employee must:
* be compensated "on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities";
* have as his or her primary duty "management of the enterprise in which the employee is employed or of a customary department or subdivision thereof";
* regularly supervise two or more other employees; and
* have "authority to hire or fire other employees" or have his or her input as to "hiring, firing, advancement, promotion or any other change of status of other employees" given "particular weight."
29 C.F.R. § 541.100.

[3] To fall within the administrative exemption, an employee must:
* be compensated "on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities";
* have as his or her "primary duty . . . the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and
* have as part of that primary duty "the exercise of discretion and independent judgment with respect to matters of significance."
29 C.F.R. § 541.200.

carried out according to detailed "policies and procedures" that dictated every aspect of the work.  They cite a document entitled "Nuts and Bolts of Property Management" and the existence of a book of detailed forms they were expected to use, and contend that they had no real authority in hiring or firing decisions, nor any discretion on matters of significance.

8. The Court finds that plaintiffs have failed to meet their burden of proving that members of the Salaried Class are similarly situated.  While there is evidence of common corporate policies and practices, the only one that plaintiffs suggest is a violation of the FLSA is the alleged misclassification.  The Court finds that this issue is not amenable to collective action.

There is no dispute that members of the Salaried Class were paid at the rate required for executive and administrative employees, but the other factors used to determine whether an employee is exempt vary according to the testimony:

\*   Some Community Directors and Resident Managers had as their primary duty the management of a department or subdivision of Lindsey Management's business, or the performance of office work directly related to that business, but some elected to devote their time (as part of a two-person team) to non-office tasks such as maintenance and repair.

\*   Those who have testified describe varying degrees of authority in hiring and firing decisions.

\*   Most Community Directors and Resident Managers had employees who worked under them.  Some, but not all, take the

position that they did not "supervise" these employees.

\*     Likewise, some, but not all, contend they had essentially no discretion in carrying out their jobs.

The Court need not determine whether management, supervision or discretion sufficient to justify exemption existed as to any particular individual in order to resolve the current motion. What is significant is that differences existed. All members of the Salaried Class do not claim the same level of managerial responsibility, supervisory authority, or discretion. These differences are such that the situation of each individual member of the Salaried Class will have to be separately evaluated to determine if that person was misclassified. Such individual attention defeats the purpose of a collective action.

9.    Plaintiffs also fail in their proof with regard to the similarity of the jobs of members of the Salaried Class. While they contend that there was no difference between the job duties of any of the Community Directors or Resident Managers, the Court does not find sufficient similarity in the positions. They differ too much from apartment community to apartment community.

For example, Falisha Jones testified that she and her husband were Community Directors at Deer Run in Claremore and at The Greens at Broken Arrow. Deer Run's amenity is a sand volleyball court. The Greens at Broken Arrow has an 18-hole golf course, golf shop, grill, and business center. Jones avers that these differences "did not affect or change our job duties." The Court is not persuaded. There could not fail to be differences between managing an 18-hole golf

-8-

course, golf shop, and grill, and *not* managing those amenities. While ultimately the finder of fact may determine that Jones was misclassified, the difference between her two positions demonstrates the variations in job duties across the Salaried Class that militate against collective disposition of its claims.

    10.   The Court need not belabor the point. Suffice it to say, the differences between the work of the various Community Directors and Resident Managers in the Salaried Class are simply too great for their FLSA claims to be decided on a collective basis.

Having reached this conclusion, the Court has also considered plaintiffs' contention that the problems with collective disposition can be remedied by creating subclasses. This is not a workable solution to the problems identified. There would have to be multiple subclasses, and even then, the Court is not persuaded that the problems pointed out in this Order would be resolved. Indeed, more problems would be created. While some named plaintiffs do not fit into either the Salaried Class or the Hourly Class[4], and would not fit into a subclass of either class, others are members of both classes (having been both hourly and salaried employees at different times), and might be members of multiple subclasses.

For all these reasons, the Court finds that the pending motion should be granted, and the Salaried Class decertified.

    11.   Because the Salaried Class is being decertified, provision

---

[4] According to the Third Amended Complaint, Kevin Kornegay was a Maintenance Manager; Linda Danforth was a Floater; Carlis Smith and Steve Pickel were Maintenance Men; Judy Kathryn Hale was a Sales Specialist.

must be made for the non-named opt-in plaintiffs who would have fallen within that class, so that they will not be unfairly deprived of their chance to present their claims. To that end, the Court finds it appropriate to toll the statute of limitations for each non-named opt-in plaintiff member of the Salaried Class, for a period running from the date that plaintiff filed his or her opt-in notice in this case to three months from the file date of this Order. This tolling will affect only claims asserted in the Third Amended And Substituted Complaint.

12. The Court further finds that this matter should be continued from its currently scheduled trial date of the week of January 13, 2014. Several considerations influence this decision. First, the Court has given a date certain trial setting on January 13, 2014, to an older case with a larger claim on the date, and that case has shown no signs of settling. Both cases cannot be tried in the space of a week.

Second, multiple motions remain pending in this case, with thousands of pages of exhibits for the Court to read and consider. It is unlikely that this can be done in the time remaining before trial.

Finally, the Court believes that decertification may significantly alter the parties' trial plans and strategies, and that additional planning time may be beneficial to both sides. The matter will be continued *sine die*, and a new trial date will be set at the Court's earliest convenience.

**IT IS THEREFORE ORDERED** that **Defendants' Motion To Decertify Conditionally Certified Class Of Salaried Employees** (document #268) is **granted**.

**IT IS FURTHER ORDERED** that the statute of limitations for each non-named opt-in plaintiff member of the Salaried Class is tolled -- for all claims asserted in the Third Amended And Substituted Complaint -- for a period running from the date that plaintiff filed his or her opt-in notice in this case to three months from the file date of this Order.

**IT IS FURTHER ORDERED** that trial of this matter, currently scheduled for the week of January 13, 2014, is continued *sine die*.

**IT IS SO ORDERED.**

          /s/ Jimm Larry Hendren
          **JIMM LARRY HENDREN**
          **UNITED STATES DISTRICT JUDGE**