```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                   FAYETTEVILLE DIVISION
```

**CHAD LOCHRIDGE; HEATHER LOCHRIDGE;**
**EVERETTE LOCHRIDGE; TWYLA LOCHRIDGE;**
**KEVIN KORNEGAY; LINDA DANFORTH;**
**RAY DANFORTH; PATRICIA LEACH; DEBRA**
**McKEE; DEBRA DIANN McKEE AS ADMINISTRATRIX**
**OF THE ESTATE OF BRIAN McKEE, DECEASED;**
**PATSY PICKEL; STEVEN PICKEL; CARLIS SMITH;**
**LYDIA SMITH; REBECCA SMITH; JUDY KATHRYN**
**HALE; SHERRY JENKINS; PEARSON JENKINS;**
**and RYAN AGEE, each individually and**
**on behalf of all persons similarly situated**                     **PLAINTIFFS**

              v.           Civil No. 12-5047

**LINDSEY MANAGEMENT CO., INC.; and**
**JAMES E. LINDSEY**                                                 **DEFENDANTS**

## O R D E R

Now on this 11th day of February, 2014, come on for consideration:

   *   **Plaintiffs' Motion For Partial Summary Judgment Regarding The Employer Status Of Separate Defendant James E. Lindsey** (document #244);

   *   **Plaintiffs' Motion For Partial Summary Judgment Regarding The Employer Status Of Separate Defendant Lindsey Management Co., Inc.** (document #247); and

   *   **Defendants' Motion To Exclude And Strike Evidence** (document #256) ("Motion To Strike"),

and from said motions, and the responses thereto, the Court finds and orders as follows:

   1.   In this action under the Fair Labor Standards Act ("FLSA"), plaintiffs allege that they were employees of defendant

Lindsey Management Co. ("Lindsey Management") is a property management firm managing apartments in Arkansas, Alabama, Kansas, Mississippi, Missouri, Nebraska, Oklahoma, and Tennessee. Plaintiffs contend that they were employed by Lindsey Management and also by James E. Lindsey ("Mr. Lindsey"). They further allege that Lindsey Management and Mr. Lindsey violated the FLSA by failing to pay them overtime compensation for all hours over 40 worked in a given workweek.

2. Plaintiffs now move for summary judgment on the twin issues of whether Lindsey Management and Mr. Lindsey can be considered their employers. Defendants oppose both plaintiffs' motions, and also object to the Court's consideration of certain evidence used to support those motions. The Court will take up the Motion To Strike first, as it impacts on the other two motions.

3. The Motion To Strike asks the Court to exclude or strike four items of evidence relied upon by plaintiffs in the other two motions:

* the Declaration of Twyla Lochridge;
* the Declaration of Patricia Leach;
* the Declaration of Ray Danforth; and
* an online newspaper article.

Defendants contend that plaintiffs failed to disclose the first three of these items in their initial disclosures or in response to discovery. The last item is objected to on the basis of hearsay.

The Court will deny the motion as to the first two items. The requirement of disclosing evidence at the start of a case cannot

fairly be read as requiring the exclusion of a party's own sworn statement used in support of a motion for summary judgment on the basis that it was not disclosed at the outset, or at the moment it was prepared.  Nor is the Court inclined to disallow the use of a party's sworn statement to support that party's own motion for summary judgment because it was not produced in discovery.  The rules of disclosure and discovery are not intended to prevent a party from testifying in her own behalf.

Nor is the Court persuaded that defendants are surprised or harmed by plaintiffs' testimony that they were defendants' employees, given that "[t]he existence of an employer/employee relationship is a prerequisite to an FLSA claim." **Lochiano v. Compasionate Care, LLC**, 2012 WL 4059873 (W.D. Mo. 2012) (unreported).

The Court will deny the motion as to the third item as moot, given the fact that the Court did not rely on Danforth's Declaration in disposing of the other two motions here under consideration.  The Court will, however, take this opportunity to point out that Danforth's status in this case is unclear.  He was initially a plaintiff, but all parties appear to treat him as a non-party after he was dropped from the Third Amended And Substituted Complaint.  The Court has retained him in the style of the case because he has not dismissed his claims, which is the appropriate means for a plaintiff to terminate his involvement in a case.  Otherwise there is no basis for the application of **F.R.C.P. 41** if that should later

become necessary.

The motion will be granted as to the fourth item, as the article in question is hearsay. The Court has not considered it in disposing of the remaining motions.

4. The standard governing evaluation of a motion for summary judgment has been summarized as follows:

> [S]ummary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. . . . The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

**Torgerson v. City of Rochester**, **643 F.3d 1031, 1042 (8th Cir. 2011)** (internal citations and quotation marks omitted).

Where there are genuine factual disputes, the Court is required to view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment. **Scott v. Harris**, **550 U.S. 372, 378 (2007)**.

5. The FLSA defines an "employee" as "any individual employed by an employer," and defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to

-4-

an employee. . . ." **29 U.S.C. § 203.** These are not particularly enlightening definitions, but case law indicates that the term "employee" is to be broadly interpreted, so as "to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." **Tony and Susan Alamo Foundation v. Secretary of Labor, 471 U.S. 290, 296 (1985).**

"In determining whether an entity functions as an individual's employer, courts generally look to the economic reality of the arrangement." **Blair v. Wills, 420 F.3d 823, 829 (8th Cir. 2005).** While most "economic reality" analysis is addressed to questions about whether an individual is an employee or an independent contractor, in the case at bar the dispute is not over employee versus independent contractor status. Rather, it appears defendants claim that plaintiffs do not work for them in any capacity, working instead for the apartment communities they manage, with Lindsey Management being merely a sort of "third party administrator" for personnel functions (payroll, benefits, taxes) of those apartment communities.

6. Among the documents in support of their motions, plaintiffs include Chad Lochridge's job application, filled out February 1, 2009, which is headed "Lindsey Management Company" and which thanks the applicant for an interest in "Lindsey Management Co., Inc., and the properties managed by it ("LMC")" and discusses

what is expected of "LMC's employees."[1] The Declarations of plaintiffs Twyla Lochridge and Patricia Leach contain averments that their paychecks and W-2 forms came from Lindsey Management. These documents support plaintiffs' contention that Lindsey Management was their employer.

With regard to Mr. Lindsey's personal involvement, plaintiffs offer several memos in which Mr. Lindsey writes in the tone of an employer with direct involvement in his employee's work. In one, dated April 8, 2009, Mr. Lindsey states that "I have agreed to allow you the opportunity to manage both properties with the following contingencies," and goes on to spell out the rewards for satisfactory performance and the consequences for unsatisfactory performance.[2] In another, dated January 13, 2012, Mr. Lindsey notes the existence of a bonus program he developed "that would encourage managers to perform at a higher level of efficiency," and congratulates a manager "for achieving this bonus."[3] These documents support plaintiffs' contention that Mr. Lindsey was their employer, and also tend to support plaintiffs' contention that Lindsey Management was their employer.

      7.    Defendants challenge the relevance of plaintiffs' evidence on the basis of its dates, contending it is outmoded, but this objection does not apply to the documents described in ¶6.

---

[1] Document #247-2.

[2] Document #244-4.

[3] Document #244-10.

Defendants also rely on the Declaration of Betsy Fox, VP/Human Resources Director at Lindsey Management. This Declaration, to the extent it is helpful to defendants, is helpful only on the issue of whether Mr. Lindsey was plaintiffs' employer. Fox avers that she "manage[s] Human Resources for [Lindsey Management] and the properties it manages, including employee benefits, payroll, compliance with state and federal employment laws, workers compensation, employee leaves, and advising Company officers, regional supervisors and apartment management on employment issues." She further avers that "[p]ersonnel files, payroll records, benefit files, and other employment records are maintained by the Human Resources Department or the payroll department" rather than by Mr. Lindsey, and that Mr. Lindsey is not responsible for supervision of any plaintiffs. These averments cast no more than "metaphysical doubt" on plaintiffs' theory of employment vis a vis Lindsey Management, but do leave open to dispute the status of Mr. Lindsey.

8. Based on the foregoing, the Court finds that Plaintiffs' Motion For Partial Summary Judgment Regarding The Employer Status Of Separate Defendant Lindsey Management Co., Inc., should be granted.

Because more than mere "metaphysical doubt" exists as to the relationship of Mr. Lindsey, personally, to the employees of Lindsey Management, the Court will deny Plaintiffs' Motion For Partial Summary Judgment Regarding The Employer Status Of Separate Defendant James E. Lindsey. Such denial does not, however, equate to a finding that Mr. Lindsey was not plaintiffs' employer, as urged by defendants. It merely leaves this issue open for trial.

**IT IS THEREFORE ORDERED** that **Plaintiffs' Motion For Partial Summary Judgment Regarding The Employer Status Of Separate Defendant James E. Lindsey** (document #244) is **denied.**

**IT IS FURTHER ORDERED** that **Plaintiffs' Motion For Partial Summary Judgment Regarding The Employer Status Of Separate Defendant Lindsey Management Co., Inc.** (document #247) is **granted**, and the Court finds that Lindsey Management Co., Inc., was the employer of plaintiffs -- to the extent they worked for apartment communities managed by Lindsey Management Co., Inc., at any time during the three (3) years preceding the filing of Plaintiffs' Complaint on March 15, 2012.

**IT IS FURTHER ORDERED** that **Defendants' Motion To Exclude And Strike Evidence** (document #256) is **granted in part and denied in part.** The motion is **granted** insofar as it seeks to exclude from consideration an online newspaper article identified as Document #244-6, and **denied** in all other respects.

**IT IS SO ORDERED.**

                                                  /s/ Jimm Larry Hendren
                                                  **JIMM LARRY HENDREN**
                                                  **UNITED STATES DISTRICT JUDGE**